

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| PHYSICIANS CHOICE WELLNESS DEVELOPMENT, LLC, | ) | No. ED112340 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Dean P. Waldemer |
| MARK R. DEVORE, | ) | |
| | ) | |
| Respondent. | ) | Filed: December 24, 2024 |

### Introduction

Physicians Choice Wellness Development, LLC ("Appellant") appeals the circuit court's judgment dismissing its petition for damages against Mark Devore, the St. Louis County Collector of Revenue ("Devore"), for failing to properly calculate its redemption costs as required by section 140.340.[1]  Appellant raises four points on appeal.  In Point I, Appellant argues the circuit court erred in dismissing its first amended petition based on official immunity because Devore had a ministerial, statutory obligation to include post-tax payments in the redemption calculation.  In Point II, Appellant argues the circuit court erred in dismissing its first amended petition based on the public duty doctrine because the petition pled facts demonstrating it had a special, direct, and distinctive interest in Devore's statutory duty to calculate the redemption amount.  In Point III, Appellant argues the circuit court erred in dismissing its first amended petition for failing to state

---

[1] All statutory references are to RSMo Supp. (2015) unless otherwise indicated.

a claim for promissory estoppel because official immunity and the public duty doctrine do not apply to contract based claims. Finally, in Point IV, Appellant argues the circuit court erred in dismissing its first amended petition with prejudice with no opportunity to amend the pleadings because the dismissal violated several Missouri Supreme Court rules.

To the extent Appellant's first amended petition asserts a tort claim, this Court holds the petition fails to plead facts or state a claim overcoming the application of official immunity. Point I is denied. Appellant's first amended petition also fails to plead facts or state a claim demonstrating the public duty doctrine exception applies to permit its tort claim to go forward. Point II is denied. To the extent Appellant's first amended petition asserts a contract claim, this Court holds it did not plead facts or state a claim for promissory estoppel because Appellant sought monetary damages. Point III is denied. Finally, this Court holds the circuit court did not abuse its discretion in dismissing Appellant's first amended petition with prejudice and without providing leave to amend. Point IV is denied.

The circuit court's judgment is affirmed.

**Factual and Procedural Background**

Because this appeal involves the circuit court's dismissal for failure to state a claim upon which relief can be granted, the relevant allegations from Appellant's first amended petition and the attached exhibits are: Appellant engaged in extensive litigation arising from the tax sale of its building in St. Louis County ("the property") after failing to pay property taxes in 2013, 2014, 2015, and 2016. Appellant's first amended petition alleged the property was sold to Jade Investment, LLC ("Jade") at a tax sale on August 28, 2017, for $67,037, at which time Jade obtained a Certificate of Purchase from Devore. On May 1, 2018, Jade paid $11,984.84 for the 2017 taxes for the property.

2

Section 140.340.5 states Devore, as the Collector of Revenue, has a statutory duty to determine the "reasonable and customary costs" of the tax sale to redeem the property. On August 23, 2018, Appellant's agent went to Devore's office to redeem the property. Devore determined the reasonable and customary costs of the tax sale. Appellant's agent paid the amount Devore calculated. Devore issued to Appellant a "Certificate of Redemption from Tax Sale" ("certificate"), which stated in part, "I Mark R. Devore, County Collector … do hereby certify that on the 23rd day of August, 2018 [Appellant] did redeem [the property]." Devore also issued Appellant a "Release of Tax Sale Certificate of Purchase" ("release"), which stated it released Jade's certificate of purchase: "Jade … is no longer entitled to any ownership interest in [the property]," and "I, Mark R. Devore, County Collector … hereby guarantee the above to be true." On August 29, 2018, Jade attempted to pay the 2018 taxes for the property and obtain a collector's deed, but Devore refused, stating Appellant redeemed the property.

Jade discovered Devore did not include its 2017 tax payment in Appellant's redemption calculation. In February 2019, Jade sought a writ of mandamus seeking to compel Devore to issue it a collector's deed because Appellant did not redeem the property. The circuit court issued a permanent writ of mandamus after Jade and Devore entered into a stipulation in which Devore admitted the allegations in Jade's agent's affidavit ("Jade affidavit") filed with the writ. The Jade affidavit stated in part, "Redemption did not occur … because no redemption money was paid for 2017 taxes or interest – monies which Jade paid and [Devore] still holds. Jade is entitled to acquire the deed to the [p]roperty." Devore issued the collector's deed to Jade as the writ directed.

Jade then sought to quiet title to the property, seeking a declaration the collector's deed was superior to all other interests of record, including Appellant's interest. Jade argued Appellant did not redeem the property because the redemption amount did not include the 2017 taxes. Jade,

3

Appellant, and Devore litigated this dispute for two years through counterclaims, discovery, motions to dismiss, and competing summary judgment motions. Appellant's summary judgment motion was overruled. Jade and Appellant ultimately settled their claims against one another, and the property was sold, with Jade and Appellant dividing the sale proceeds. Appellant dismissed its claims against Devore without prejudice.

Appellant then sued Devore in his individual capacity for damages related to the miscalculation of the redemption amount, which substantially echoed the third-party petition claims Appellant raised against Devore in the quiet title action. The petition alleged Devore had a ministerial duty to determine the reasonable and customary costs of the tax sale necessary to redeem the property and to issue the certificate and release. The petition further alleged Devore's duty to calculate the redemption amount and properly issue the certificate and release was personal to Appellant, and was not a general public duty because each task was specific to Appellant's property. The petition claimed Appellant was entitled to rely on Devore's redemption calculation, the certificate, and the release, and Appellant did so rely. The petition alleged Appellant lost possession of the property, paid proceeds to Jade to settle its claims, incurred attorney's fees and costs, paid the property's sale costs, and was "deprived of past and future profits reasonably certain to be derived from ownership of the property." Appellant sought monetary damages. Appellant attached the certificate, the release, and the Jade affidavit to its petition.

Devore moved to dismiss the petition for failure to state a claim because it was barred by res judicata, sovereign immunity, official immunity, and the public duty doctrine. Appellant responded to the motion, but also requested leave to amend the petition to clarify it was not suing Devore in his official capacity and noted the current petition was "in the same form and substance

4

as [its] previous first amended petition" from the quiet title action. Devore consented to the amendment, which the circuit court granted.

Devore moved to dismiss the amended petition for failure to state a claim a second time, raising the same arguments from the first motion to dismiss. Appellant filed its first amended petition, to which Devore responded with a "renewed" motion to dismiss. Appellant then sought to amend its petition by interlineation because it inadvertently omitted the exhibits attached to its original petition, to which Devore consented. Appellant filed a "reply" to Devore's renewed dismissal motion, arguing its claim was not barred by: (1) res judicata because there was no identity of the cause of action; (2) official immunity because Devore had a ministerial duty to include the 2017 taxes in the redemption calculation; and (3) the public duty doctrine because Devore had a special, direct, and distinct duty to Appellant to calculate the redemption amount correctly because it was the property owner and sole redemptioner. Appellant further argued official and sovereign immunity were statutorily waived, and the bond Devore had to maintain covered its damages. For the first time, Appellant argued the first amended petition stated sufficient facts to support promissory estoppel, and official immunity could not bar a breach of contract claim.

After Devore filed a reply and a hearing was held,[2] the circuit court sustained Devore's motion to dismiss Appellant's first amended petition and dismissed its claim with prejudice. Appellant moved to amend the judgment or for leave to file an amended petition. Appellant further argued the circuit court's dismissal with prejudice granted relief beyond Devore's pleading, and it should be given another opportunity to amend its petition because the previous amendments were

---

[2] Devore abandoned his argument Appellant's claim was barred by res judicata.

5

"minor alterations" and the amended petition "was, in substance, [Appellant's] initial attempt to state its cause of action." The circuit court overruled Appellant's motion. This appeal follows.

**Standard of Review**

This Court reviews a circuit court's judgment on a motion to dismiss *de novo*. *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019). "A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition." *Mo. State Conf. of NAACP v. State*, 601 S.W.3d 241, 246 (Mo. banc 2020) (quoting *Mitchell v. Phillips*, 596 S.W.3d 120, 122 (Mo. banc 2020)). "When considering whether a petition states a claim upon which relief can be granted, the Court reviews the plaintiff's petition 'to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in th[e] case.'" *Forester v. May*, 671 S.W.3d 383, 386 (Mo. banc 2023) (quoting *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001)). This "Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *R.M.A.*, 568 S.W.3d at 424. "However, '[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted.'" *Spiegel v. Ferguson-Florissant Sch. Dist.*, 625 S.W.3d 800, 806 (Mo. App. E.D. 2021) (quoting *Willamette Indus., Inc. v. Clean Water Comm'n of State of Mo.*, 34 S.W.3d 197, 200 (Mo. App. W.D. 2000)). When a circuit court does not "state a basis for its dismissal, this Court presumes the dismissal was based on the grounds stated in the motion to dismiss." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 391 (Mo. banc 2001). Appellant's points will be addressed out of order for clarity. This Court addresses Point III first because Appellant contends it pled a cause

6

of action for promissory estoppel and official immunity and the public duty doctrine cannot bar a contract claim.

## Discussion

*Point III – Failure to State a Claim for Promissory Estoppel*
*Party Positions*

In Point III, Appellant argues the circuit court erred in dismissing its first amended petition because it stated a claim for promissory estoppel. Devore argues the circuit court properly dismissed Appellant's petition because Appellant never alleged its petition asserted a contract claim or promissory estoppel until its response to his renewed motion to dismiss. Even then, Devore argues the petition failed to identify the contract supporting the promissory estoppel claim.

*Analysis*

Governmental immunities cannot bar contractual claims. *See V.S. DiCarlo Constr. Co. v. State*, 485 S.W.2d 52, 54 (Mo. 1972) (holding "when the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance, just as any private citizen would do by so contracting."). To the extent Appellant argues its claim is based in contract, Appellant contends it pled a cause of action for promissory estoppel. "Promissory estoppel is a form of equitable relief." *Zipper v. Health Midwest*, 978 S.W.2d 398, 412 (Mo. App. W.D. 1998). To assert a claim for promissory estoppel, Appellant must plead four elements: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007). "In Missouri, promissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Id.*

This Court holds Appellant did not plead facts to support a claim for the fourth element of promissory estoppel: facts demonstrating injustice can be avoided only by enforcement of Devore's alleged guarantee. "Equitable relief through promissory estoppel is inappropriate [when] a claimant seeks money damages or has other adequate legal remedies available." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. App. E.D. 2012).

The reasoning from *Clevenger* and *Zipper* applies to Appellant's claim. Appellant's first amended petition does not seek to redeem the property, which Devore cannot provide. Instead, Appellant's first amended petition alleges it "was compelled to pay $205,000 to settle the dispute, incurred in excess of $40,000 in attorney's fees and costs in collateral litigation, incurred the costs of effecting the sale, and has been deprived of past and future profits reasonably certain to be derived from ownership of the property." The first amended petition requested the circuit court "enter judgment for damages against Devore and in favor of [Appellant], in an amount in excess of $25,000 that will fully compensate [Appellant] for its loss of the property and its redemption payments, for costs, and for such other relief as the [c]ourt may deem just and proper …." Appellant's first amended petition seeks monetary damages. Hence, equitable relief is inappropriate. *Clevenger*, 237 S.W.3d at 591.

"A court rightly refuses a request to grant leave to amend if the requested amendment would not cure the legal defects in the originally-asserted claims." *Suppes v. Curators of Univ. of Mo.*, 613 S.W.3d 836, 857 (Mo. App. W.D. 2020). The circuit court did not err in finding Appellant's first amended petition did not state a claim for promissory estoppel and in dismissing this claim with prejudice without leave to amend because amending the petition cannot cure this legal deficiency. Point III is denied.

*Points I and II: Official Immunity and Public Duty Doctrine*
*Party Positions*

To the extent Appellant's first amended petition could be read to assert a tort claim, this Court turns to Points I and II. Because these two points are interrelated, they will be discussed together. In Point I, Appellant argues the circuit court erred in dismissing its first amended petition based on official immunity. Appellant contends Devore had a ministerial, statutory obligation to include subsequent tax payments in the redemption calculation because section 140.340.2 mandated the 2017 tax payment be included, and it was omitted. Devore argues official immunity bars Appellant's claim because section 140.340.5 requires the Collector of Revenue to determine the reasonable and customary costs of the tax sale to redeem the property, and there is no rote formula to apply when making this determination.

In Point II, Appellant argues the circuit court erred in dismissing its first amended petition based on the public duty doctrine because its petition pled facts and statutes demonstrating it had a special, direct, and distinctive interest in Devore's statutory duty to calculate the redemption amount. Devore argues the public duty doctrine bars Appellant's claim because he owes the general public a duty to perform the redemption calculation, not Appellant personally.

*Chapter 140 Tax Sale Provisions*

"Since 1935, the Jones-Munger Act (the Act), currently codified in chapter 140 of the revised code, has governed tax sales in Missouri." *York v. Horner*, 564 S.W.3d 641, 644 (Mo. App. E.D. 2018). "Chapter 140 provides that the county collector conduct an annual sale each August of real property on which tax payments have been delinquent." *Sneil, LLC v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 568 (Mo. banc 2012). To retain their rights, tax purchasers "shall be required to pay the taxes subsequently assessed" on the property "within the redemption period, and upon failure to do so … shall forfeit all rights acquired by [the] certificate of purchase, so far

9

as the [property] taken possession of is concerned." Section 140.320; *see also* section 140.410 (stating when property is sold for delinquent taxes and a certificate of purchase has issued, the purchaser has a "duty … to cause all subsequent taxes to be paid on the property purchased *prior to* the issuance of any collector's deed ….") (emphasis added).

The tax sale triggers a redemption period for the owner. *York*, 564 S.W.3d at 645. "[T]he purpose of the tax sale redemption process is to protect both the property owner and the tax sale purchaser while encouraging a transparent and fair recovery process for incurred costs." *Mo. Bond Co. LLC v. Devore*, 641 S.W.3d 397, 404 (Mo. App. E.D. 2022). Section 140.340 governs redemption after a tax property sale for delinquent taxes:

> Upon paying the reasonable and customary costs of sale to the county collector for the use of the purchaser … the owner; lienholder; or occupant of any land or lot sold for taxes, or any other persons having an interest therein, shall have the absolute right to redeem the same at any time during the one year next ensuing and shall continue to have a defeasible right to redeem the same until such time as the tax sale purchaser acquires the deed, at which time the right to redeem shall expire, provided upon the expiration of the lien evidenced by a certificate of purchase under section 140.410 no redemption shall be required.

Section 140.340.1. "The reasonable and customary costs of the sale needed to redeem any land or lot sold for taxes under this section shall be determined by the collector." Section 140.340.5. "The reasonable and customary costs of sale include all costs incurred in selling and foreclosing tax liens under this chapter, and such reasonable and customary costs shall include the following:

> the full sum of the purchase money named in the certificate of purchase and all the costs of the sale, including the cost to record the certificate of purchase as required in section 140.290, the fee necessary for the collector to record the release of such certificate of purchase, and the reasonable and customary cost of the title search and postage costs of notification required in sections 140.150 to 140.405, together with interest at the rate specified in such certificate, not to exceed ten percent annually, except on a sum paid by a purchaser in excess of the delinquent taxes due plus costs of the sale incurred by the collector, no interest shall be owing on the excess amount, with all subsequent taxes which have been paid thereon by the purchaser, his or her heirs or assigns with interest at the rate of eight percent per annum on such taxes subsequently paid, and in addition thereto the person

redeeming any land shall pay the costs incident to entry of recital of such redemption[.]"

Section 140.340.2. "A redemption payment, while collected by the county collector, is for the benefit of the purchaser of the property at the tax sale and is *not* the payment of taxes due." *Kelly v. Nelson*, 226 S.W.3d 882, 886 (Mo. App. W.D. 2007) (emphasis in original).

*Official Immunity*

"'Immunity' connotes not only immunity from judgment but also immunity from suit." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495 (Mo. banc 2024) (quoting *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. banc 2023)). "Although both official immunity and the public duty doctrine similarly operate to protect public officials from liability for allegedly negligent conduct, they are separate and distinguishable doctrines under Missouri Law." *Moore v. City of O'Fallon*, 681 S.W.3d 715, 724 (Mo. App. E.D. 2023) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 610–12 (Mo. banc 2008)). Official immunity is a "judicially-created doctrine [which] protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers*, 263 S.W.3d at 610. Public employees are not protected "for torts committed when acting in a ministerial capacity." *Id*. *Southers* explained how courts distinguish discretionary acts from ministerial acts. "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id*. "A ministerial function, in contrast, is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id*.

The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. Even a discretionary act, however, will not be protected by official immunity if the conduct is willfully wrong or done with malice or corruption.

*Id.* "[O]fficial immunity does not deny the existence of the tort of negligence, but instead provides [the employee] will not be liable for damages caused by his [or her] negligence." *Id.* at 611.

When determining whether an act is ministerial, "[t]he central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains *any* discretion in completing an act[.]" *Morales*, 679 S.W.3d at 472 (emphasis in original). *Alsup* explained:

The fact that a statute or regulation may confer authority – or even a duty – to act in a given situation says nothing about whether the act authorized or compelled is the sort of ministerial or clerical act to which official immunity does not extend. Thus, the relevant inquiry is not whether the law authorizes, regulates, or requires an action. Instead, it is whether the action itself is ministerial or clerical. And, even when a clerical or ministerial act appears to be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done.

*Alsup,* 588 S.W.3d at 192–93 (internal citations and footnotes omitted).

"[A] plaintiff must plead *facts* establishing an exception to official immunity[.]" *Morales*, 679 S.W.3d at 471 (emphasis added) (quoting *Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo. App. S.D. 2014)). "This requires the plaintiff to allege the existence of a statutory or departmentally-mandated duty and breach of that duty to survive a motion to dismiss for failure to state a claim.'" *Stephens*, 453 S.W.3d at 251.

To establish an exception to official immunity, Appellant's first amended petition contains the following allegation: "[Devore] had a ministerial duty to determine the reasonable and customary costs of sale necessary to redeem the property, and to issue his [certificate] and [release]

in accordance with the Jones-Munger Act, Chapter 140, RSMo." This general statement constitutes a legal conclusion, which this Court must disregard when determining whether a petition states a claim upon which relief can be granted. *Spiegel*, 625 S.W.3d at 806. When disregarding this allegation, Appellant's first amended petition contains no facts establishing an exception to official immunity regarding Devore's duty to calculate the redemption costs.[3]

Even when affording the broadest intendment possible to find this conclusory allegation was based in fact given Appellant's refinement in its response to Devore's motion to dismiss, this Court must first resolve which "act" Devore performed before determining whether it was discretionary or ministerial to then decide whether official immunity bars Appellant's claim. Devore maintains the act of determining the "reasonable and customary costs" when calculating the redemption costs associated with the tax sale is the discretionary act, even in the face of his concession he mistakenly omitted the 2017 taxes in the redemption calculation. Appellant argued its "specific grievance with [Devore's] calculation of the 'reasonable and customary costs of sale' is actually [Devore's] omission of the 2017 after-sale tax payment made by the tax sale purchaser, which caused Jade to seek title to the property."[4] Hence, Appellant argues and the dissenting opinion posits the particular "act" of failing to include the subsequent tax payment in the redemption calculation is the ministerial act Devore failed to perform because section 140.340.2 mandates its inclusion in the final redemption cost.

---

[3] When addressing Appellant's first amended petition, the dissenting opinion notes the certificate attached contains initials in the corner which supports a finding the discrete act is ministerial because the initials indicate someone other than Devore calculated the redemption cost. Although this Court may consider exhibits attached to the pleading when reviewing a motion to dismiss, *Hill-Bey v. Vandergriff*, 697 S.W.3d 105, 108 (Mo. App. E.D. 2024), Appellant did not raise this legal argument until his reply brief, and he concedes discovery related to whom performs the calculation is not in the record before us.

[4] Appellant cites paragraph 19 to support this contention, but that paragraph only notes "Jade discovered that Devore failed to include the 2017 tax payment made by Jade in his calculation of redemption amount."

13

In determining which "act" Devore is performing when calculating redemption costs, this Court must interpret section 140.340, which governs Devore's statutory duty. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019) (quoting *State ex rel. Young v. Wood*, 254 S.W.3d 871, 872–73 (Mo. banc 2008)). "[W]ords in a statute are not read in isolation but, rather, are read in the context of the statute to determine their plain and ordinary meaning." *Id*. In *Kehlenbrink*, the Missouri Supreme Court stated and applied these rules of statutory interpretation to an unambiguous sales tax provision and compared language from three different sentences within the same statute to determine the appropriate tax credit. *Kehlenbrink*, 577 S.W.3d at 801–02. Hence, this Court finds the Missouri Supreme Court's directive in *Kehlenbrink* compels us to read the words in section 140.340 in context, not in isolation, to determine their plain and ordinary meaning.

First, section 140.340.5 plainly states the "act" the collector must perform: "*The reasonable and customary costs* of sale needed to redeem any land or lot sold for taxes under this section *shall be determined* by the collector." (Emphasis added). Section 140.340.2 lists what reasonable and customary costs are included in this calculation. Second, this Court finds our recent decision in *Missouri Bond* instructive when analyzing the collector's duty under section 140.340. In *Missouri Bond*, a tax purchaser sought reimbursement of title search costs, attorney's fees, and postage from the collector after the property owner redeemed the property. *Mo. Bond*, 641 S.W.3d at 400. The tax purchaser alleged the attorney's fees represented the property's title report costs and "attorney's fees, generally." *Id*. at 401. The collector declined to reimburse these costs, finding the cost was "not only not recoverable but also not reasonable …." *Id*. The collector directed the tax purchaser to submit a modified invoice and indicated it would "review … and accept the

14

invoice if the reported costs for collection are reasonable and customary costs" citing section 140.340.5. *Id*. Instead of submitting a modified invoice, the tax purchaser sued various parties alleging the collector failed to collect and reimburse it for the reasonable and customary costs of the tax sale. *Id*. The circuit court dismissed the tax purchaser's claims, and the tax purchaser appealed. *Id*.

When construing sections 140.340 and 140.405, this Court stated:

[T]he question is whether "shall" [in section 140.340.2] indicates a clearly defined mandate to the collector of revenue to collect a discrete list of recoverable costs, incapable of expansion under a set of circumstances, or whether the statute is the base itemization of costs leaving a tax sale purchaser the option of seeking recovery of other unlisted costs, if reasonable and customary, as determined by the collector.

*Id*. at 403. This Court determined the statutory intricacies required to complete a tax sale purchase, along with the statutory language, authorized "the inclusion of an attorney as part of the process, at the very least for the postage and title search and report associated with the property." *Id*. at 403–04. Although this Court found "attorney's fees are not a categorically unrecoverable cost category under sections 140.340 and 140.405," this Court explained, "it is ultimately the duty of the collector to determine whether those costs are reasonable and customary." *Id*. at 404. To recover these costs, the tax "purchaser has the burden to firmly establish the reasonableness and customary nature of each cost and its necessity in a given property tax sale in order to recover." *Id*. This Court held "it is within the collector of revenue's statutorily granted authority to require detailed itemization, explanation, and documentation of costs associated with a tax sale purchase from the purchaser to fully fulfill the collector's role in deciding the appropriateness and extent of reimbursement." *Id*. On remand, this Court issued instructions to the tax purchaser "to submit invoices clearly identifying each category of cost associated with the tax sale" and "establish each cost as reasonable and customary." *Id*. This Court then directed the collector "to assess the

15

reasonableness and customary nature of *each category* of cost under the circumstances," which would then be reviewed by the circuit court. *Id*. at 404–05 (emphasis added).

The dissenting opinion reduces Devore's duty down to include one discrete item in section 140.340.2's list of recoverable costs: "all subsequent taxes which have been paid thereon by the purchaser." This interpretation reads the statute too narrowly because it reads this phrase in isolation rather than reading it in context of the entire section. *Kehlenbrink*, 577 S.W.3d at 800. While this Court agrees with the dissenting opinion that *Missouri Bond* did not address official immunity or determine whether the collector's duties under section 140.340 were discretionary or ministerial, its analysis aligned with these concepts and applies here.

When analyzing *the entire statute*, *Missouri Bond* rejected the notion section 140.340 contained merely "a clearly defined mandate to the collector of revenue to collect a discrete list of recoverable costs, incapable of expansion under a set of circumstances," cutting against finding Devore's statutory duty in calculating redemption costs under section 140.340 is a ministerial function. *Id*. at 403–04; *see also Southers*, 263 S.W.3d at 610 (defining a ministerial act as one which requires a public official to perform a function "of a clerical nature," "upon a given state of facts, in a prescribed manner" and "without regard to his own judgment or opinion concerning the propriety of the act to be performed."). Instead, *Missouri Bond* found the collector's ultimate duty is "deciding the appropriateness and the extent of reimbursement" by assessing "the reasonableness and customary nature of *each category* of cost under the circumstances," indicating Devore's statutory duty under section 140.340 requires the discretionary act of determining what is reasonable and customary for each discrete item. *Id*. at 404–05 (emphasis added); *see also Southers*, 263 S.W.3d at 610 (stating "A discretionary act requires the exercise of reason in the adaption of means to end and discretion in how or whether an act should be done or course

16

pursued."). Thus, while "each category of cost" may contain language one could characterize as ministerial as the dissenting opinion asserts, *Missouri Bond* examined the overarching *act of calculating* the redemption cost to find discretion still was required when examining each category of cost. *Mo. Bond*, 641 S.W.3d at 404–05. This language is crucial to the analysis because it demonstrates the collector still must determine the reasonable and customary nature of each category of cost of an item, regardless of whether the cost is subject to variance—such as attorney's fees, title company fees, postage, and the interest rate specified in the certificate up to ten percent per annum—or whether the cost is more certain, such as subsequent taxes. Hence, this Court finds when reading section 140.340 as a whole, as we must, the "act" contemplated by the statute was Devore's calculation of the reasonable and customary costs of the tax sale, not merely the discrete exclusion of the 2017 taxes.

Having held the "act" was Devore's overall calculation of the reasonable and customary costs of the tax sale, this Court must now determine whether that calculation was discretionary or ministerial. The dissenting opinion states, "Devore had no discretion to determine when or how the costs to redeem are calculated [because section 140.340] prescribes the method by which the calculation must be made and Devore is required to perform this calculation when a property owner exercises redemption rights." However, "[a]n act is not ministerial simply because it is required by statute." *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 164 (Mo. banc 2021). "[E]ven when a clerical or ministerial act appears to be authorized or required by statute, official immunity will still apply if the official retains authority to decide when and how that act is to be done." *Alsup*, 588 S.W.3d at 192–93. Here, this Court finds, consistent with *Missouri Bond*, the act of calculating the redemption amount was discretionary because Devore was required to exercise discretion in determining the reasonableness and customary nature of *each category* of cost under the statute,

17

thus entitling him to official immunity. The retention of any discretion in completing the act of calculating the redemption amount renders the act discretionary. *Morales*, 679 S.W.3d at 472.[5]

*Public Duty Doctrine*

"[O]fficial immunity merely impacts liability, but does not destroy the underlying tort" whereas "[a]pplication of the public duty doctrine leaves the plaintiff unable to prove all of the elements of his claim for negligence" hence destroying the underlying tort. *Southers*, 263 S.W.3d at 612. "Rather than operating as an affirmative defense, the public duty doctrine delineates the legal duty owed to the plaintiff by a public employee." *Moore*, 681 S.W.3d at 724. This doctrine "negates the duty element required to prove negligence, such that there can be no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole" by a public official. *Southers*, 263 S.W.3d at 612. Stated differently, "[t]his public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public." *Id*. at 611.

"The public duty doctrine does not insulate a public employee from all liability, as he could still be found liable for breach of ministerial duties in which an injured party had a 'special, direct, and distinctive interest.'" *Id*. at 611–12 (internal citation omitted) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986)). "This exception exists when injury to a particular, identifiable individual is reasonably foreseeable as a result of a public employee's breach of duty." *Id*. at 612. "Whether an individual has such a private interest depends on the facts of each case, not on broad pronouncements about the usual status of relevant functions." *Id*. Further, "[i]t cannot be assumed that a duty is private under this exception simply because it is

---

[5] This Court recognizes applying the official immunity doctrine under these circumstances ends in a harsh result for Appellant. Because the Jones-Munger Act is a creature of statute, the legislature may impose liability on the collector for mistakes such as these, as it deems appropriate. *See e.g.*, section 140.490 (permitting property owners to sue the collector for improper assessment and/or sale after improper assessment).

ministerial." *Id*. at n.10 (citing *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996) (*abrogated on other grounds by Southers*, 263 S.W.3d at 614 n.13)).

Regarding Devore's public duty, Appellant's first amended petition stated: "Devore's duty to calculate the redemption amount for the property described herein and properly issue [the certificate] and [release], was personal to [Appellant], and is not a general public duty, in that each of these tasks was specific to property owned by [Appellant]." The first amended petition fails to allege Appellant possessed "a special, direct, and distinctive interest" in the property. Again, Appellant's first amended petition fails to plead facts, but instead, offers legal conclusions which this Court must disregard when determining whether it stated a claim upon which relief could be granted. *Spiegel*, 625 S.W.3d at 806; *see also Green v. Missouri Dep't of Transp.*, 151 S.W.3d 877, 883 (Mo. App. S.D. 2004) (*abrogated by Southers on other grounds*, 263 S.W.3d at 603) (recognizing an amended petition failed to plead facts regarding public duty when reviewing the amended petition revealed "nowhere [was] there a single assertion that [the r]espondents owned a particularized, individual duty to [a]ppellant ….").

As with its official immunity challenge, Appellant refined its claim in response to the motions to dismiss. It now claims Devore had a ministerial duty to include the 2017 taxes in the redemption calculation and Appellant had a special, direct, and distinctive interest under the statute, which states the property owner whose property was sold at a tax sale has an "absolute right to redeem" the property. Section 140.340.1. Because this Court determined Devore's act of calculating the reasonable and customary costs of redemption was discretionary, Appellant cannot demonstrate a ministerial duty-based exception to prevail under the public duty doctrine. *See Southers*, 263 S.W.3d at 619. Thus, the exception to the application of the public duty doctrine

for breach of ministerial duties when a party has a special, direct, and distinctive interest does not apply here. *Id*. at 611–12.

To the extent Appellant claims its first amended petition states a tort claim, the circuit court correctly found the petition failed to plead facts or state a claim that both official immunity and the public duty doctrine do not bar its claim. Points I and II are denied.

*Point IV – Dismissal with Prejudice and Denial of Leave to Amend*
*Party Positions*

In its final point, Appellant argues the circuit court erred in dismissing its first amended petition with prejudice with no opportunity to amend because the dismissal violated several Missouri Supreme Court rules. Appellant further contends because Devore's motion to dismiss did not request a dismissal with prejudice, the resulting dismissal with prejudice was too harsh and constituted an abuse of discretion. Appellant further claims the circuit court should have permitted it to amend the first amended petition further.[6] Devore maintains the circuit court properly exercised its discretion in dismissing Appellant's first amended petition with prejudice because it had ample opportunity to raise any and all claims it wished to assert and was afforded multiple opportunities to amend.

*Analysis*

"The circuit court retains 'broad discretion to allow or disallow amendments to pleadings.'" *Holmes v. Union Pac. R.R. Co.*, 617 S.W.3d 853, 857 (Mo. banc 2021) (quoting *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 610 (Mo. banc 2008)). "[D]iscretionary rulings are

---

[6] To the extent Appellant argues the circuit court erred in: (1) allowing Devore an opportunity to respond to Appellant's "reply" after the hearing; (2) finding Appellant's "reply" was late; (3) granting relief beyond the bounds of the motion when stating "among other bases" in the judgment; (4) and not finding official immunity was waived, this Court declines to review these claims because they were not included in a point relied on. "We will not afford even *ex gratia* review of an error raised in the argument section of an appellant's brief but not captured in an associated point relied on." *Abram v. TitleMax of Mo., Inc.*, 684 S.W.3d 74, 89 (Mo. App. E.D. 2023) (quoting *Wallace v. Byrne*, 672 S.W.3d 96, 106 (Mo. App. E.D. 2023)).

presumed correct[.]" *Id.* (quoting *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992)). A circuit court abuses its discretion, however, when the ruling "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (quoting *Sherrer v. Boston Sci. Corp.*, 609 S.W.3d 697, 705 (Mo. banc 2020)).

Appellant argues the circuit court's dismissal with prejudice violated several Missouri Supreme Court Rules.[7] First, Appellant cites Rule 55.26(a), which requires any party seeking an order from the court to file a motion which "state[s] with particularity the grounds therefor, and shall set forth the relief or order sought." Second, Appellant cites Rule 44.01(d), which requires a written motion and notice of the hearing be served before the time specified for the hearing. Finally, Appellant relies on Rule 67.06, which states, "On sustaining a motion to dismiss a claim, counterclaim or cross-claim the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed."

It is undisputed Devore's motions to dismiss requested Appellant's first amended petition be dismissed, but did not request it be dismissed with prejudice. Hence, Appellant contends it was not afforded notice this relief would be granted, the circuit court's dismissal with prejudice was too harsh a remedy, and leave to amend should have been granted under Rule 67.06. Appellant cites *Smith v. Stewart*, 644 S.W.3d 5 (Mo. App. E.D. 2022), to support its position. In *Smith*, the circuit court dismissed the plaintiffs' petition with prejudice based on these facts:

> Plaintiffs had only filed their original petition; Defendant's motion to dismiss did not request a dismissal with prejudice; the withdrawal of Plaintiffs' second attorney was effective two days before the dismissal hearing due in part to the court's ruling on the motion to withdraw one day after it was filed and without a hearing; the trial court's docket entry ordering Plaintiffs to appear at the motion to dismiss hearing was entered only one day before the hearing; and the dismissal hearing took place without the presence of Plaintiffs nor any counsel on their behalf.

---

[7] All references are to Missouri Supreme Court Rules (2022).

*Smith*, 644 S.W.3d at 13.  This Court held the circuit "court's dismissal of Plaintiffs' original petition with prejudice, without giving Plaintiffs an opportunity to amend, was too harsh and constituted an abuse of discretion."  *Id*.  This Court found this holding was consistent with Rule 67.06.  *Id*. at 14 n.7.

Appellant contends, "While the *Smith* court noted that the plaintiff there had not previously amended the petition, the same is substantially true with respect to Appellant's First Amended Petition."  This Court disagrees and finds Appellant's procedural posture is distinguishable from the plaintiffs in *Smith* because Appellant has been afforded multiple opportunities to amend and its counsel has zealously pursued Appellant's claim for years.  The record reveals Appellant's first amended petition is the fifth attempt to articulate a claim against Devore when considering Appellant asserted its current petition was "in the same form and substance as [its] previous first amended petition" against Devore from the quiet title action.[8]  "Our liberal amendment rules are not meant to be employed as a stratagem of litigation ... after previous contentions failed."  *Clark v. Shaffer*, 662 S.W.3d 137, 142 (Mo. App. W.D. 2023) (quoting *Moore v. Armed Forces Bank, N.A.*, 534 S.W.3d 323, 328 (Mo. App. W.D. 2017)).  Appellant further argues the fact Devore did not seek dismissal with prejudice is significant because had he done so, "Appellant would have immediately moved to amend and add every possible theory."  Appellant concludes by stating under the circumstances, "it would be unjust to count the First Amended Petition as Appellant's 'second try' and it "should have been allowed to proceed on alternate theories, which were presented" in Appellant's "reply" to Devore's renewed motion to dismiss and at the hearing on the renewed motion to dismiss.

---

[8] This is evident from the final paragraph of Appellant's first amended petition at issue here, which appears to carry over language from Appellant's third-party petition against Devore in the quiet title action and states in part: "WHEREFORE, Third-Party [Appellant] prays that in the event this Court determines ownership of the property in Jade's favor, this Court enter it [sic] judgment for damages against Devore and in favor of [Appellant] …."

22

Although Rules 67.06 and 55.33(a) both "stress granting amendments to pleadings liberally, they do not confer an absolute right to file even a first amended petition." *Sheffield v. Matlock*, 587 S.W.3d 723, 731 (Mo. App. S.D. 2019) (quoting *Moore v. Firstar Bank*, 96 S.W.3d 898, 903 (Mo. App. S.D. 2003)). "The purpose of the amendment rule is 'to enable a party to present evidence that was *overlooked or unknown* at the time that the original pleading was filed.'" *Clark*, 662 S.W.3d at 142 (emphasis added) (quoting *Saint Luke's Hosp. of Kan. City*, 626 S.W.3d 731, 757 (Mo. App. W.D. 2021)). Appellant had several opportunities to amend its petition, even if it chose to confine itself only to refine certain phrasing and could have availed itself of the opportunity to "add every possible theory." Appellant did not provide the circuit court with a proposed amended petition explaining how the first amended petition would be further refined or what evidence was overlooked or unknown before the initial petition was filed. "Appellate courts have found no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed." *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 92 (Mo. App. E.D. 2012) (quoting *Firstar Bank*, 96 S.W.3d at 904).

Finally, when an amendment may cure any defects in the pleading and injustice will result to the party opposing a dismissal motion, this Court has found an abuse of discretion occurs in denying leave to amend. *See Metro Fill Dev., LLC v. St. Charles Cnty.*, 614 S.W.3d 582, 596 (Mo. App. E.D. 2020). Yet, "granting leave to amend [is] not required when any amendment would be futile and the requested amendment would not cure the deficiency." *Sullivan v. City of Univ. City*, 677 S.W.3d 844, 854 (Mo. App. E.D. 2023). As discussed, Appellant's first amended petition stated legal conclusions regarding an exception to official immunity and whether Devore owed Appellant a public duty. Even when considering the facts Appellant included in its response

to Devore's motions to dismiss, Appellant cannot plead additional facts demonstrating either a contract claim or a tort claim under this Court's interpretation of section 140.340. Thus, the granting of any leave to amend would have been futile.

Under these circumstances, this Court cannot say the circuit court abused its discretion when it dismissed Appellant's petition with prejudice and without leave to amend. Point IV is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. concurs.
Renée Hardin-Tammons, J. dissents in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

| | | |
|---|---|---|
| PHYSICIANS CHOICE WELLNESS DEVELOPMENT, LLC, | ) ) ) | No. ED112340 |
| Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| v. | ) ) | Cause No. 22SL-CC04524 |
| MARK R. DEVORE, | ) ) ) | Honorable Dean P. Waldemer |
| Respondent. | ) | Filed: December 24, 2024 |

**DISSENT**

I respectfully dissent from the majority's opinion. I would reverse and remand on Points I and II concerning official immunity and the public duty doctrine, as they are dispositive.

*Official Immunity*

The majority's decision is based on the finding that Appellant's first amended petition fails to meet its burden to overcome a motion to dismiss in that it includes only legal conclusions relating to official immunity or public duty doctrine exceptions. I disagree that Appellant has failed to meet its burden for a motion to dismiss. Instead, I would find that the amended petition is sufficient to meet the low threshold for a motion to dismiss in that Appellant alleges Devore had a ministerial duty under Chapter 140 to correctly calculate the costs of redemption and failed to do so. However, I cannot join with the majority's analysis of official immunity here, because

1

it focuses entirely on the theoretical statutory interpretation of Section 140.340, rather than the actual specific act at issue here: Devore's failure to include the amount of subsequent taxes paid for 2017 within the total redemption calculation. While the majority insists the entirety of the redemption calculation is the act at issue here, I find that Section 140.340 allows for separation of the required or allowed distinct calculations within the total redemption costs. Applying this finding, we may then determine whether the required or allowed categories of costs enumerated or implied within the statute may be either ministerial or discretionary in nature. Appellant is not contesting the entirety of the redemption calculation; rather Appellant is only contesting the single determination of subsequent taxes paid, as Devore's error in that calculation is the crux of the underlying claim.

Missouri courts have consistently found that statutory interpretation is unnecessary when the plain language of a statute is not ambiguous. *Broy v. Broy*, 698 S.W.3d 801, 807 (Mo. App. E.D. 2024), *reh'g and/or transfer denied* (Sept. 9, 2024), *transfer denied* (Nov. 5, 2024) ("We resort 'to other rules of statutory interpretation only when the plain meaning of the statute is ambiguous or defeats the purpose of the statute.") (quoting *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014)). In this case, I find the plain and ordinary meaning of the statute should guide the analysis because the statute is unambiguous, and that any further application of the doctrines of statutory interpretation are therefore unwarranted. Furthermore, I have found no similar cases applying doctrines of statutory interpretation to questions of official immunity. Rather, I am compelled to read the statute in accordance with the test set out by Missouri's official immunity doctrine: "the determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the

2

consequences of not applying official immunity." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008), *as modified on denial of reh'g* (Sept. 30, 2008). While statutory interpretation requires looking at the entire statute, this test from *Southers* instructs the court to consider "the *act…* on a case-by-case basis." *Id*. (emphasis added).

The majority relies on this Court's decision in *Missouri Bond* for the proposition that the entirety of the redemption cost calculation must be considered a singular act, and that such act is discretionary. However, I find that *Missouri Bond* is distinguishable and inapplicable to the case before us for three reasons. First, *Missouri Bond* did not involve official immunity or public duty doctrine claims, and at no point discusses or determines discretionary or ministerial duties within the calculation of redemption costs. Next, the implied authority discussed and recognized in *Missouri Bond* that allows the collector of revenue to include attorneys' fees in the calculation is vastly different from the enumerated requirement within the statute for the collector to unquestionably include subsequent taxes paid.

Third, and perhaps most importantly, *Missouri Bond*'s statement that "the Collector is required to assess the reasonableness and customary nature of each category of cost under the circumstances, including attorney's fees," must be read within the context in which it is given, specifically referencing the collector's assessment of invoices submitted by a party pertaining to costs that may be impliedly allowed within the statute. *Missouri Bond Co., LLC v. Devore*, 641 S.W.3d 397, 404-05 (Mo. App. E.D. 2022). This statement does not pertain to costs for which Devore has sole knowledge and which are indisputable, and which *must* be included in the collector of revenue's calculation. Here, the exclusion at issue is subsequent paid taxes for 2017, of which only Devore would have the correct information on amounts actually paid. Indeed, it would be problematic for the owner to submit redemption costs when Devore is statutorily

3

mandated to notify the owner of such costs before the owner pays the redemption amount. Because the case before us does not involve attorneys' fees, the only costs being calculated are statutorily mandated in the formula, would produce only one possible number, and are not subject to discretion or a reasonableness interpretation in any manner; subsequent taxes paid is not subject to change when calculated by other people. As such, Devore has no discretion to determine whether the subsequent taxes paid amount is reasonable or customary. The number simply is what it is and must be accepted as such. Further, *Missouri Bond* puts the burden to establish the reasonable and customary nature of costs submitted for reimbursement on the party submitting the invoices. *Id.* at 405. As such, the findings in *Missouri Bond* inapposite to the factual scenario presented here.

Nevertheless, the majority insists that the statute must either be read as discretionary or ministerial as a whole based on the singular act of the calculation, and overlooks the possibility that each cost included within the calculation may be individually ministerial or discretionary. Generally, Devore's "professional judgment" is not required in order to include the amount of subsequently paid property taxes on the collector's form being analyzed here. Further, the form includes the initials of someone other than Devore, which Appellant asserts may show that the action was performed by a subordinate, and merely approved by the collector of revenue. Ministerial duties are often seen as "of such a routine and mundane nature that it is likely to be delegated to subordinate officials." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. banc 2019). "'Rubber stamp' duties of public officials fall into the category of ministerial tasks." *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 472–73 (Mo. banc 2023).

4

Additionally, "[i]n order to prescribe a ministerial duty, the statute or regulation must be mandatory and not merely directory." *McCoy v. Martinez*, 480 S.W.3d 420, 425 (Mo. App. E.D. 2016). Prior rulings have defined ministerial acts by saying

> a ministerial function is one that a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience of the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. A public employee is only liable for a ministerial act if the conduct violates either a duty imposed by statute or regulation or a departmentally mandated duty.

*J.M. v. Lee's Summit Sch. Dist.*, 545 S.W.3d 363, 372 (Mo. App. W.D. 2018). It is undisputed that Devore was mandated by the statute to include the amount of subsequently paid taxes in the calculation. When a public official does not retain any discretion "to decide *when and how* [an] act is to be done," it is not a discretionary duty. *Alsup*, 588 S.W.3d at 192–93 (emphasis added). It is abundantly clear that Devore had no discretion to determine *when and how* the costs to redeem are calculated—the statute prescribes the method by which the calculation must be made and Devore is required to do so when a property owner exercises the statutory right to redeem. Further, Devore has no discretion to exclude a cost that the statute requires to be included in the calculated costs.

Missouri courts have consistently held that "[t]he central question is whether there is any room whatsoever for variation in when and how a *particular task* can be done. If so, that task— by definition—is not ministerial." *Alsup*, 588 S.W.3d at 191 (emphasis added). Additionally, if the public official "retains any discretion in completing an act" the duty is not ministerial. *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 472 (Mo. banc 2023). Here, there is no evidence or argument that Devore retained discretion with regard to determining this category of costs. *See Kemp v. McReynolds*, 621 S.W.3d 644, 655 (Mo. App. E.D. 2021) ("The face of the petition does not clearly establish that Defendants had the discretion to decide whether to call 911 upon

5

observing Cameron having difficulties breathing. Thus, the First Amended Petition properly states a claim that Defendants breached a ministerial duty and therefore fall within the ministerial act exception to official immunity"). In fact, Devore admitted in a prior proceeding that this exclusion was a mistake serious enough to invalidate the redemption by Appellant.

Therefore, I would hold that the official immunity doctrine is not a bar to Appellant's claims.

*Public Duty Doctrine*

Regarding the application of the public duty doctrine, I would find that the statute does confer a special, direct, and distinctive interest to Appellant as the property owner. Section 140.340 states, in pertinent part, that the property owner "shall have the absolute right to redeem the same at any time during the one year" upon payment of the reasonable and customary costs of the sale. Section 140.340.1. Accordingly, Appellant appropriately pleaded the redemption calculation was "personal to Physicians, and is not a general public duty, in that each of these tasks was specific to property owned by Physicians." On *de novo* review of a motion to dismiss, these facts are taken as true and are likely enough to avoid a motion to dismiss based on the public duty doctrine. *Smith v. Humane Soc'y of United States*, 519 S.W.3d 789, 798 (Mo. banc 2017).

When acts are performed "as part of a public employee's official duties, for the purpose of fulfilling the employee's general duties to the public, the public duty doctrine applies." *Smith v. Finch*, 324 F. Supp. 3d 1012, 1030 (E.D. Mo. 2018). "The public-duty doctrine does not insulate a public employee from all liability because the employee could still be found liable for a breach of ministerial duties in which an injured party had a 'special, direct, and distinctive interest.'" *E.M. by & through McInnis*, 613 S.W.3d at 396 (quoting *Southers*, 263 S.W.3d at

6

611). This exception applies "when injury to a particular, identifiable individual is reasonably foreseeable as a result of the public employee's breach of duty." *Id*. Here, as established above, Devore had the ministerial duty to include the amount of subsequent taxes paid for 2017 on the collector's form, and this duty was owed to Appellant, as the property owner, because the statute grants a specific right to redeem.

Notably, "rarely if ever will the public duty doctrine provide a shield from liability where the official immunity doctrine would not. The two doctrines merge; they produce the same result." *Brown v. Tate*, 888 S.W.2d 413, 416 (Mo. App. W.D. 1994). Accordingly, I would hold that the public duty doctrine, like the official immunity doctrine, does not apply here to bar Appellant's claims.

*Conclusion*

For the foregoing reasons, I respectfully dissent from the majority's decision. I would reverse and remand to the trial court for further proceedings on Appellant's tort claims.

_____
Renée D. Hardin-Tammons, J.