

# SUPREME COURT OF MISSOURI
# en banc

ROBUST MISSOURI )     *Opinion issued July 22, 2025*
DISPENSARY 3, LLC, )
    )
    Appellant, )
    )
v. )     No. SC100898
    )
ST. LOUIS COUNTY, )
MISSOURI, ET AL., )
    )
    Respondents. )

## APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
### The Honorable Brian H. May, Judge

Robust Missouri Dispensary 3, LLC, appeals from a judgment declaring a county—as well as a village, town, or city in an incorporated area of that county—are both "local governments" that may impose and collect a 3 percent sales tax pursuant to article XIV, section 2.6(5) of the Missouri Constitution. On appeal, Robust claims the circuit court erred in granting summary judgment in favor of St. Louis and St. Charles Counties,[1] and asserts it was entitled to summary judgment because the plain language of

---

[1] Both St. Louis and St. Charles Counties, along with the director of revenue, are respondents in this appeal. The respondents are referred to collectively as "the Counties."

article XIV, section 2 specifies only a village, town, or city in an incorporated area may impose a 3 percent sales tax on non-medical marijuana.

The plain language of article XIV, section 2 limits the definition of "local government" to allow only one local government to impose a 3 percent tax—a village, town, or city in an incorporated area, and a county in an unincorporated area. The circuit court erred in sustaining the Counties' motions for summary judgment. The judgment is vacated, and the case is remanded to the circuit court to enter judgment for Robust and for such further proceedings as are not inconsistent with this opinion.

**Background**

Missouri voters approved an initiative petition in November 2022 amending the Missouri Constitution to legalize the non-medical use and possession of marijuana for persons 21 years or older. This initiative petition was 14,000 words in length and is codified in article XIV, section 2 of the Missouri Constitution. This constitutional amendment had the stated purpose of legalizing the use and possession of marijuana under state and local law while controlling "the commercial production and distribution of marijuana under a system that licenses, regulates, and taxes the businesses involved while protecting public health." Mo. Const. art. XIV, sec. 2.1.

Alongside the legalization of marijuana, article XIV, section 2 created a taxation scheme for the retail sale of non-medical marijuana. In addition to the 4.225 percent Missouri sales tax, the constitutional provision required the state levy a 6 percent tax on the sale of all non-medical marijuana sold to consumers at licensed marijuana

dispensaries.[2] Mo. Const. art. XIV, sec. 2.6(1). Local governments are also authorized to impose an additional sales tax not to exceed 3 percent if the voters of a political subdivision choose to enact such a tax ordinance. Mo. Const. art. XIV, sec. 2.6(5). "Local government" as used in article XIV, section 2.6(5) is defined as, "in the case of an incorporated area, a village, town, or city and, in the case of an unincorporated area, a county." Mo. Const. art. XIV, sec. 2.2(12).

After the constitutional amendment legalizing non-medical marijuana took effect, the voters of both the city of Florissant and St. Louis County voted to impose a 3 percent sales tax on the retail sale of non-medical marijuana pursuant to article XIV, section 2.6(5). Robust operates a dispensary in Florissant, an incorporated city in St. Louis County. Robust collected and remitted the 3 percent sales tax to Florissant but did not remit the same to St. Louis County. The department of revenue then sent a sales tax change notification letter to Robust, informing the business it was required to remit an additional 3 percent sales tax to St. Louis County.

Robust petitioned for declaratory and injunctive relief against St. Louis County and the Missouri director of revenue, seeking a declaration that (1) article XIV, section 2 does not authorize a county to impose an additional sales tax when the dispensary is located within the boundaries of an incorporated village, town, or city; and (2) article XIV authorizes a county to impose a retail sales tax at a dispensary only if it is located in

---

[2] This state marijuana sales tax is paid to the department of revenue and placed in a fund used to expunge criminal history records, to support veterans, addiction treatment, and the public defender system. Mo. Const. art. XIV, sec. 2.6(2).

an unincorporated area of that county. Robust also sought to enjoin the director of revenue from collecting any sales tax enacted by St. Louis County pursuant to article XIV from sales of non-medical marijuana at Robust's dispensary in Florissant.

The circuit court sustained St. Charles County's motion to intervene in the action because its voters also had passed a 3 percent sales tax on the retail sale of marijuana and argued there were common issues of law and fact allowing St. Charles County to defend the lawfulness of its tax ordinance.[3]

Robust moved for summary judgment, and the Counties filed counter-motions for summary judgment.[4] All parties admitted there were no disputed issues of material fact. The circuit court entered summary judgment in the Counties' favor and overruled Robust's motion, finding the definition of "local government" must include a county in an incorporated area. The circuit court reasoned, if a county were not a "local government" in an incorporated area, one of the stated purposes of article XIV, section 2—protecting public health—would be frustrated. The court acknowledged article XIV, section 2.5(3) provides, "The only local government ordinances and regulations that are binding on a marijuana facility are those of the local government where the marijuana facility is located." Mo. Const. art. XIV, sec. 2.5(3). Accordingly, the circuit court reasoned if "local government" was limited only to a village, town, or city in an

_____

[3] St. Charles County filed an answer and cross-petition against the director of revenue, seeking a declaration that the county could collect a retail sales tax on non-medical marijuana from any dispensary located within the county in addition to any sales tax imposed by an incorporated village, town, or city within that county.
[4] The director of revenue supported the Counties' motions for summary judgment in its response to Robust's motion for summary judgment.

4

incorporated area, dispensaries would not be bound by any county ordinance, including ordinances related to public health.

Robust appeals.[5]

## Standard of Review

A circuit court's grant of summary judgment is reviewed *de novo*.[6] *Weeks v. St. Louis Cnty.*, 696 S.W.3d 333, 338 (Mo. banc 2024). "In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper." *Id.* (internal quotation omitted). A circuit court will sustain a motion for summary judgment if the moving party shows there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* This Court reviews the record in the light most favorable to the party against whom summary judgment was entered, and all reasonable inferences from the record are to be drawn in that party's favor. *Id.*

This Court reviews questions of constitutional interpretation *de novo*. *Faatz v. Ashcroft*, 685 S.W.3d 388, 400 (Mo. banc 2024). "Constitutional provisions are subject to the same rules of construction as other laws, except that constitutional provisions are given a broader construction due to their more permanent character." *Pestka v. State*, 493 S.W.3d 405, 408-09 (Mo. banc 2016) (internal quotation omitted). "Words used in

---

[5] After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

[6] A circuit court's overruling of a motion for summary judgment is generally not appealable. *See M & P Enters., Inc. v. Transamerica Fin. Servs.*, 944 S.W.2d 154, 162 (Mo. banc 1997).

5

constitutional provisions are interpreted to give effect to their plain, ordinary, and natural meaning." *Faatz*, 685 S.W.3d at 400 (internal quotation omitted). "This Court must assume that every word contained in a constitutional provision has effect, meaning, and is not mere surplusage." *Pestka*, 493 S.W.3d at 409 (internal quotation omitted). Because the rules of statutory interpretation mirror the rules for the interpretation of constitutional provisions, this Court does not utilize canons of construction when the language of a constitutional provision is plain and unambiguous. *See State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 605 (Mo. banc 2019).

## Analysis

The issue in this case is whether a county may impose a 3 percent sales tax on the sale of non-medical marijuana sold within an incorporated area of the county.[7]

Robust asserts the circuit court erred in sustaining the Counties' motions for summary judgment because article XIV, section 2.6(5) authorizes *one* "local

---

[7] St. Charles County argues Robust has not been aggrieved by the circuit court's judgment and, as a result, has no standing to appeal the judgment. Pursuant to section 512.020, RSMo 2016, only parties aggrieved by the circuit court's judgment may appeal a final judgment. "Aggrieved" has been defined as "showing grief, injury, or offense; having a grievance; *specif*: suffering from an infringement or denial of legal rights." *See Hudson v. Joplin Reg'l Stockyards, Inc.*, 701 S.W.3d 862, 865 (Mo. banc 2024) (internal quotation omitted). Because the circuit court's judgment requires Robust to pay an additional 3 percent tax, Robust argues it is suffering an unconstitutional double tax on its non-medical marijuana sales. Robust, therefore, is aggrieved and has standing to bring this appeal.

government," upon voter approval, to impose a 3 percent sales tax on all retail sales of non-medical marijuana sold within that political subdivision.[8]

**The definition of "local government" pursuant to article XIV, section 2.2(12)**

The term "local government" is defined in section 2 of article XIV as: "in the case of an incorporated area, a village, town or city and, in the case of an unincorporated area, a county." Mo. Const. art. XIV, sec. 2.2(12).

Robust argues the Counties are not a "local government" as defined in article XIV, section 2 when the dispensary is located in an incorporated area within the county. "When a statute defines a word used in a statute, the statutory definition of that word must be employed in determining the statute's meaning." *Lisle v. Meyer Elec. Co.*, 667 S.W.3d 100, 104 (Mo. banc 2023).

Robust contends the plain language of section 2.2(12) distinguishes what constitutes a "local government" between incorporated and unincorporated areas. In an incorporated area, the three listed local governmental forms—an incorporated village, town, or city—may institute a three percent sales tax. In an unincorporated area—which would include an unincorporated village, town, or city and other unincorporated areas of the county—a county may institute the 3 percent sales tax.[9] The Counties dispute this

---

[8] The 3 percent local sales tax is in addition to a 6 percent state tax on the sale of non-medical marijuana pursuant to article XIV, section 2.6(1) and the general state sales tax of 4.225 percent.

[9] Missouri also recognizes unincorporated villages, towns, and cities. *See* section 72.080.1, RSMo 2016, ("Any unincorporated city, town, or other area of the state may, except as otherwise provided in sections 72.400 to 72.420, become a city of the class to which its population would entitle it pursuant to this chapter, and be incorporated pursuant to the law for the government of cities of that class, in the following

7

interpretation, asserting a county may also institute a 3 percent tax in an incorporated area. The Counties argue the use of the conjunction "and" between "in the case of an incorporated area, a village, town, or city" and "in the case of an unincorporated area, a county" means both a county and a city are "local governments."

This argument, however, fails because words must be read not in isolation but within the context of the provision when determining their meaning. *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019). The Counties' interpretation ignores the phrase "in the case of an unincorporated area" that appears immediately before the words "the county," which indicates a county may implement and collect the tax *only* when a dispensary is located in an unincorporated area.[10]

Pursuant to the constitutional amendment, "local government" is defined as "in the case of an incorporated area, a village, town, or city and, in the case of an unincorporated area, a county." Mo. Const. art. XIV, sec. 2.2(12). The paired phrases—"in the case of" and "and, in the case of"—introduce two distinct, mutually exclusive scenarios. The word "and" simply indicates those are the only two alternatives. Treating "and" as a merger, so that both a city and a county are "the" local government in an incorporated area, would erase the contrast the "in the case of" phrases draw, making those words superfluous. *See*

---

manner…"). This, however, is of no consequence to the analysis of article XIV, section 2. The drafters of article XIV, section 2 chose to allow counties to collect this tax only in unincorporated areas. Additionally, Robust is located in Florissant, a city that has been incorporated since 1786. *See* State of Missouri, *Official Manual* 809 (2023-2024).

[10] The dissenting opinion posits that Robust reads the constitutional provision to mean that cities and counties themselves are mutually exclusive. Of course, cities and counties geographically overlap. Nonetheless, article XIV, section 2 defines "local government" differently depending on incorporation status. That distinction controls.

*State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 586 (Mo. banc 2018) ("The

legislature will not be presumed to have inserted idle verbiage or superfluous language in

a statute." (internal quotation omitted)). Interpreting "and" as a connector preserves

every word of the definition and gives meaning to every phrase without distorting the

grammar.[11] This Court will not adopt a convoluted meaning that renders words

meaningless when the plain language of the provision is clear.

The drafters of article XIV, section 2 specified a "local government" is based on

the area in which the dispensary is located. If a marijuana dispensary is located in an

incorporated area, that village, town, or city is the only local government that may

institute the 3 percent tax pursuant to section 2.6(5). If the dispensary is located in an

unincorporated area, however, then the county is the only local government authorized to

institute the 3 percent tax.

---

[11] The dissenting opinion claims this interpretation treats "and" as if it were "or" without "strong reason" for doing so. This is not true. The word "and" must be read within the context of the definition as a whole. *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019). Section 2.2(12) has a clear structure, distinguishing what a "local government" is based on its status: incorporated or unincorporated. This definition is unambiguous. Treating the word "and" as joining these two purposefully disjointed phrases ignores the drafters' choice to separate them and creates unnecessary ambiguity in the provision. *Hawkins v. Hawkins*, 511 S.W.2d 811, 813 (Mo. 1974) ("[Treating "and" as "or,"] however, is never resorted to **except for strong reasons** and the words should never be so construed **unless the context favors the conversion**; as where it must be done in order to effectuate the manifest intention of the user; and **where not to do so would render the meaning ambiguous**, or result in an absurdity; or would be tantamount to a refusal to correct a mistake." (emphasis added)).

**A local government's authority to institute the 3 percent sales tax pursuant to article XIV, section 2.6(5)**

The Counties next contend certain language in article XIV, section 2.6(5) supports the circuit court's judgment. This section provides,

> Pursuant to Article III, Section 49 of this Constitution, the governing body of ***any local government*** is authorized to impose, by ordinance or order, an ***additional sales tax*** in an amount not to exceed three percent on all tangible personal property retail sales of adult use marijuana sold in ***such political subdivision***. The tax authorized by this paragraph shall be in addition to any and all other tangible personal property retail sales taxes allowed by law, except that no ordinance or order imposing a tangible personal property retail sales tax under the provisions of this paragraph shall be effective unless the governing body of the political subdivision submits to the voters of the political subdivision, at a municipal, county or state general, primary or special election, a proposal to authorize the governing body of the political subdivision to impose a tax. Any additional local retail sales tax shall be collected pursuant to the general laws for the collection of local sales taxes.

Mo. Const. art. XIV, sec. 2.6(5) (emphasis added). The Counties argue section 2.6(5) authorizes "any local government" to impose "an additional sales tax" on marijuana sold within "such political subdivision" and permits a county to impose a tax anywhere within its political boundaries. *See id.* Although the Counties believe this Court's precedent requires "any local government" to mean *every* local government, this Court does not read a single word in isolation but instead considers it within the context of the entire provision.[12] *Kehlenbrink*, 577 S.W.3d at 800. As discussed above, "local government," as defined in section 2.2(12), distinguishes incorporated and unincorporated areas.

---

[12] The Counties cite *State ex rel. Randolph County v. Walden*, 206 S.W.2d 979, 983 (Mo. banc 1947), for the proposition that "any local government" must mean every local government. "We have held the word 'any' to be all-comprehensive and the equivalent of 'every.'" *Id.*

10

Moreover, referencing the 3 percent sales tax as "additional" does not mean double taxation by a county and by a village, town, or city is contemplated by the provision. The 3 percent sales tax authorized pursuant to section 2.6(5) is *additional* to the 6 percent state marijuana sales tax authorized pursuant to section 2.6(1) and the 4.225 percent Missouri sales tax.

The Counties also emphasize the term "political subdivision" used in section 2.6(5), suggesting use of this distinct term implies the term has a different definition than "local government" and indicates a county may institute and collect a 3 percent tax anywhere within its boundaries. Again, the Counties attempt to interpret words in isolation. While use of two different terms may suggest the two terms have different meanings, this presumption does not apply to section 2.6(5) because "such" modifies "political subdivision." Any local government is able to collect the 3 percent sales tax on marijuana sold in *such* political subdivision. Mo. Const. art. XIV, sec. 2.6(5). In other words, a "local government" may collect a 3 percent sales tax on non-medical marijuana sold within that "local government." *See State ex rel. Dep't of Health & Senior Servs. v. Slusher*, 638 S.W.3d 496, 498 (Mo. banc 2022) ("Every word contained in a constitutional provision has effect, meaning, and is not mere surplusage." (alteration omitted)). Accordingly, section 2.6(5) supports the finding that only one "local government" may collect a 3 percent sales tax on non-medical retail sales of marijuana.

11

**Ordinances and regulations that are binding on marijuana dispensaries pursuant to article XIV, section 2.5(3)**

The Counties argue using the plain language definition of "local government" in section 2.2(12) would lead to absurd results and contradicts article XIV's stated purpose to protect public health. *See Berhow v. State,* No. SC100809, --- S.W.3d ---, 2025 WL 1239580, at *2 (Mo. banc Apr. 29, 2025) ("[S]tatutes cannot be interpreted in ways that yield unreasonable or arbitrary results that defeat the purpose of the legislation." (alterations and internal quotation omitted)). Specifically, section 2.5(3) states, "The only local government ordinances and regulations that are binding on a marijuana facility are those of the local government where the marijuana facility is located." Mo. Const. art. XIV, sec. 2.5(3). The Counties assert, if the plain language definition in section 2.2(12) discussed above is adopted, a marijuana dispensary in an incorporated area would be bound only by ordinances and regulations of the village, town, or city in which it is located.[13] They argue, pursuant to Robust's interpretation of "local government," counties could not enforce health and safety ordinances in incorporated areas.[14] The Counties' interpretation is not supported by the text of article XIV, section 2. The scope of section 2.5(3) extends only to ordinances and regulations passed pursuant to article XIV, section 2.

---

[13] Nothing in article XIV, section 2 bars an incorporated area from adopting health regulations mirroring those of the county.

[14] The Counties fail to acknowledge article XIV, section 2 grants the Missouri Department of Health and Senior Services the primary regulatory authority over the non-medical marijuana industry, including public health.

Each time the word "ordinance" is used in article XIV, section 2, it is addressing ordinances relating to the use and possession of non-medical marijuana, as well as its commercial production and distribution, licenses, regulations, and taxes. For example, section 2.5(2)(a) discusses a local government's ability to repeal a ban of the operations of dispensaries by "its own ordinance." This local government ordinance would naturally be limited to marijuana dispensaries. Similarly, section 2.5(5) prohibits a local government from enacting ordinances or regulations disallowing the operation of a marijuana dispensary with a transportation certification or enacting ordinances making dispensaries' operation unduly burdensome. Section 2.5(5) also authorizes a local government to institute ordinances or regulations governing the time, place, and manner of these dispensaries and institute civil penalties for their violation. Again, the ordinances and regulations in section 2.5(5) relate exclusively to the non-medical marijuana amendment.

Finally, section 2.6(5) also states a local government may institute the 3 percent tax on the sale of non-medical marijuana *by ordinance*. There is consistency across article XIV, section 2 with the references to the various "ordinances and regulations" local governments have the authority to pass pursuant to article XIV, section 2. Such references clearly indicate the local government ordinances and regulations contemplated by section 2.5(3) are only the local government's ordinances and regulations relating to this amendment. Reading section 2.5(3) within the context of the entirety of section 2, "ordinances and regulations" have a narrowed meaning—ordinances and regulations passed pursuant to the authority given by article XIV, section 2. Consequently, the

13

Counties maintain their authority to institute any ordinances and regulations outside of this purview, such as health and safety ordinances.

The dissenting opinion resists this narrowed definition of "ordinances and regulations," asserting, in each of the constitutional provisions discussing ordinances, the provisions contain language limiting ordinances to marijuana-related ordinances. This, of course, is true, but the dissenting opinion fails to comprehend its significance. Each of these provisions is located in article XIV, section 2, which has the express purpose to legalize non-medical marijuana under state and local law while controlling "the commercial production and distribution of marijuana under a system that licenses, regulates, and taxes the businesses involved while protecting public health." Mo. Const. art. XIV, sec. 2.1. This Court is instructed to interpret section 2—including section 2.6(5)—in accordance with this purpose. Mo. Const. art. XIV, sec. 2.1. Narrowly reading section 2.6(5)'s "ordinances and regulations," limiting them to ordinances and regulations passed pursuant to article XIV, section 2, is the correct interpretation in accordance with this purpose.

**A local government's ability to ban non-medical microbusiness dispensary facilities and comprehensive marijuana dispensary facilities pursuant to article XIV, section 2.5(1)(b)**

The dissenting opinion contends the plain language definition of "local government" renders language in section 2.5(1)(b) superfluous and misinforms voters. The dissenting opinion is correct that its interpretation of this ballot language is misleading to voters. This is because the dissenting opinion misconstrues the ballot language as written.

14

Section 2.5(1)(b) directs, should a local government desire to ban all non-medical marijuana dispensaries, it may submit specific ballot language to the voters for them to enact such a ban.[15]  The ballot language reads, "Shall (insert name of local government) ban all non-¬medical microbusiness dispensary facilities and comprehensive marijuana dispensary facilities from being located within (insert name of local government and, where applicable, its "unincorporated areas") and forgo any additional related local tax revenue? ( ) Yes ( ) No."

The dissenting opinion offers an incorrect example of this ballot language: "Shall St. Louis County ban all non-medical microbusiness dispensary facilities and comprehensive marijuana dispensary facilities from being located within St. Louis County *and its* 'unincorporated areas' and forgo any additional related local tax revenue? ( ) Yes ( ) No." This is not how the provision instructs the ballot language be written.  The dissenting opinion includes "and its" between the name of the local government and the phrase "unincorporated areas."  Neither "and" nor "its," however, is included in the specific ballot language.  The word "and" as used in this provision means "unincorporated areas" is added to the name of the local government.  The word "its" as

<hr>

[15] To be clear, the issue of the proper ballot language as provided in article XIV, section 2 is not before this Court.  Moreover, the analysis of the plain language of section 2.5(1)(b) has no impact on the interpretation of other ballot language provisions in article XIV, section 2, including ballot language used to establish the 3 percent "local government" non-medical marijuana sales tax.  Article XIV, section 2 provides no specific ballot language for the establishment of the sales tax pursuant to section 2.6(5), and that ballot language is not before this Court.

15

used in this provision clarifies the local government seeking the ban encompasses these "unincorporated areas."

Additionally, the dissenting opinion contends the ballot language, as it interprets it, renders the words "and its unincorporated areas" superfluous. True, while a county as a "local government" pursuant to section 2.2(12) is limited to collect sales taxes only in the unincorporated areas of the county, that limitation is not expressed in the dissenting opinion's proposed ballot language. In its proposal, a voter would likely believe the reference to the name of the county would include all areas in its geographic boundaries, both incorporated and unincorporated areas.

Employing the ballot language as provided in section 2.5(1)(b) alleviates any confusion to the voter. Using this language, a voter would be informed the county is banning non-medical marijuana dispensaries within only the unincorporated areas of that county, as the plain language of the provision intended.

The plain language of section 2.2(12) is unambiguous. In an incorporated area, the "local government" is an incorporated village, town, or city, and, in an unincorporated area, the "local government" is a county. Sections 2.6(5), 2.5(3), and 2.5(1)(b) do not change this result. Accordingly, article XIV, section 2 authorizes a county to impose a retail sales tax at a dispensary located in an unincorporated area of that county but not at a dispensary located within the boundaries of an incorporated village, town, or city such as Florissant. The Counties' ordinances are valid to the extent they impose a 3 percent sales tax on non-medical marijuana sold in unincorporated areas, but they cannot be enforced within incorporated cities, towns, and villages.

16

## Conclusion

The circuit court's judgment entered in the Counties' favor is vacated. The case is remanded to the circuit court to enter judgment for Robust and for such further proceedings as are not inconsistent with this opinion.

_____
Mary R. Russell, Judge

Powell, C.J., Ransom, Wilson
Broniec and Gooch, JJ., concur;
Fischer, J., dissents in separate
opinion filed.



**SUPREME COURT OF MISSOURI**
**en banc**

ROBUST MISSOURI )
DISPENSARY 3, LLC, )
)
Appellant, )
)
v. ) No. SC100898
)
ST. LOUIS COUNTY, )
MISSOURI, ET AL., )
)
Respondents. )

### DISSENTING OPINION

I respectfully dissent. Article XIV, § 2.6(5) allows "any local government" to impose an additional sales tax up to three percent on recreational marijuana. Because the plain text of article XIV, § 2.2(12) defines a county as a "local government" in both incorporated and unincorporated areas, St. Louis and St. Charles counties may impose a three percent sales tax on recreational marijuana in the incorporated areas within their borders. I would affirm the judgment.

### Factual Background and Procedural History

On November 8, 2022, Missourians approved Amendment 3. In relevant part, that constitutional amendment created a recreational marijuana "system that licenses, regulates,

and taxes the businesses involved" and instructed courts to interpret Amendment 3 "in accordance with the purpose and intent set forth in this section." Mo. Const. art. XIV, § 2.1. To further this purpose, article XIV, § 2 allows "the governing body of any local government … to impose, by ordinance or order, an additional sales tax in an amount not to exceed three percent on all tangible personal property retail sales of adult use marijuana sold in such political subdivision." Mo. Const. art. XIV, § 2.6(5). On April 4, 2023, St. Louis County voters approved "Prop M," which imposed an additional 3-percent sales tax on recreational marijuana in St. Louis County.

Robust Missouri Dispensary 3, LLC, operates a dispensary in Florissant, an incorporated city in St. Louis County. In October 2023, the Missouri Department of Revenue sent Robust a "Sales Tax Rate Change Notification." The letter informed Robust that St. Louis County had "imposed a [three] percent county adult use marijuana sales tax" and instructed Robust to "collect and remit tax at the new sales tax rate."

Robust filed a declaratory judgment action against St. Louis County and the Director of Revenue in his official capacity. Robust sought two similar declarations: that article XIV, § 2 permits (1) a county to impose an additional 3-percent sales tax only in an unincorporated area; and (2) an incorporated village, town, or city to impose an additional 3-percent sales tax only in an incorporated area. In addition, Robust requested an injunction preventing the Director of Revenue from collecting any additional sales tax St. Louis County imposed at Robust's Florissant location.

After St. Louis County and the Director filed their answers, St. Charles County intervened and filed a cross-petition against the Director in his official capacity. St. Charles

2

County requested a declaratory judgment that all Missouri counties could impose an additional 3-percent sales tax in any incorporated village, town, or city within the county's boundaries.

Robust, St. Louis County, and St. Charles County all moved for summary judgment. All parties agreed there was no genuine dispute as to any material facts. The circuit court sustained St. Louis County's and St. Charles County's motions for summary judgment and overruled Robust's motion for summary judgment.

Robust appeals from the circuit court's judgment sustaining the counties' motions for summary judgment.[1]

## Standard of Review

"The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*." *Green v. Fotoohighiam,* 606 S.W.3d 113, 115 (Mo. banc 2020). "Summary judgment is only proper

---

[1] As a preliminary matter, St. Charles County argues Robust does not have standing to appeal the circuit court's judgment as to St. Charles County. Section 512.020(5), RSMo 2016, permits "[a]ny party to a suit aggrieved" to appeal from any "[f]inal judgment in the cause." This right to appeal "does not require that the aggrieved" party be a 'party' in the sense that he either has or is subject to a pending claim, notwithstanding the effects of the judgment of which he complains." *In re Cir. Att'y 22d Jud. Cir. ex rel. Dunn*, 708 S.W.3d 867, 871 n.4 (Mo. banc 2025) (internal quotations omitted). In the context of § 512.020, the "word 'aggrieved' means showing grief, injury, or offense; having a grievance; *specif*: suffering from an infringement or denial of legal rights." *Hudson v. Joplin Reg'l Stockyards, Inc.*, 701 S.W.3d 862, 865 (Mo. banc 2024) (internal quotations omitted). Pursuant to St. Charles County's request for relief, the circuit court's judgment authorizes all Missouri counties to collect an additional sales tax within the boundaries of an incorporated municipality. Because this judgment requires Robust to "collect and remit" St. Louis County's additional sales tax, Robust is aggrieved by the judgment.

3

if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.* "Summary judgment may be affirmed on any appropriate theory supported by the record." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co.*, 464 S.W.3d 177, 183 (Mo. banc 2015). Questions of law, such as constitutional interpretation, are reviewed *de novo*. *Fletcher v. Young*, 689 S.W.3d 161, 164 (Mo. banc 2024).

**Analysis**

This case primarily involves the interpretation of two provisions of article XIV, § 2 of the Missouri Constitution: subsections 2(12) and 6(5). "This Court's primary goal in interpreting Missouri's constitution is to ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted." *State v. Honeycutt*, 421 S.W.3d 410, 414-15 (Mo. banc 2013) (internal quotations omitted). "[E]very word contained in a constitutional provision has effect, meaning, and is not mere surplusage." *Id.* at 415. "The meaning conveyed to the voters" comes from "the ordinary and usual meaning" of the words used. *Farmer v. Kinder,* 89 S.W.3d 447, 452 (Mo. banc 2002). When a constitutional provision defines a certain word or phrase, "that construction supersedes the commonly accepted dictionary or judicial definition, and it is binding on the courts." *Ivie v. Smith*, 439 S.W.3d 189, 203 (Mo. banc 2014). In the absence of a definition, the ordinary meaning of the words is derived from the dictionary. *Zahner v. City of Perryville*, 813 S.W.2d 855, 858 (Mo. banc 1991). The constitutional provision should be "considered as a whole," with the "primary objectives of the provision in issue"

4

in mind. *Mo. Prosecuting Att'ys v. Barton Cnty.*, 311 S.W.3d 737, 742 (Mo. banc 2010) (internal quotations omitted).

St. Louis County and St. Charles County imposed a 3-percent sales tax in the incorporated and unincorporated areas of their respective jurisdictions pursuant to article XIV, § 2.6(5). That subsection provides:

> Pursuant to Article III, Section 49 of this Constitution, the governing body of any local government is authorized to impose, by ordinance or order, an additional sales tax in an amount not to exceed three percent on all tangible personal property retail sales of adult use marijuana sold in such political subdivision. The tax authorized by this paragraph shall be in addition to any and all other tangible personal property retail sales taxes allowed by law, except that no ordinance or order imposing a tangible personal property retail sales tax under the provisions of this paragraph shall be effective unless the governing body of the political subdivision submits to the voters of the political subdivision, at a municipal, county or state general, primary or special election, a proposal to authorize the governing body of the political subdivision to impose a tax. Any additional local retail sales tax shall be collected pursuant to general laws for the collection of local sales taxes.

So the counties can impose an additional sales tax if they fit article XIV, § 2's definition of "local government."

"'Local government' means, in the case of an incorporated area, a village, town, or city *and*, in the case of an unincorporated area, a county." Mo. Const. art. XIV, §2.2(12). (emphasis added). The plain and ordinary meaning of "and" is "a: along with or together with … b: added to or linked … c: as well as … e: also at the same time … g: in addition to being …." *And*, *Webster's Third New International Dictionary* (1961). "The first meaning of 'and' ... is not 'or' but 'along with or together with' or words of comparable meaning." *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 615 (Mo. banc 2016) (alteration in original). Through the use of the conjunction "and," the plain language of this subsection

5

allows a county to impose an additional sales tax in both incorporated and unincorporated areas. If the drafters of article XIV, § 2 intended to prevent a county from imposing a tax in an incorporated area, they would have used the disjunctive "or."

Applying the plain and ordinary meaning of "and" here tracks Missouri's municipal statutory scheme. Missouri separates municipalities into incorporated and unincorporated categories. *See, e.g.*, § 72.080.3, RSMo 2016 ("In any county with a charter form of government where fifty or more cities, towns and villages have been incorporated, an unincorporated city, town or other area of the state shall not be incorporated except as provided in sections 72.400 to 72.420.").[2]

The principal opinion asserts that "[t]reating 'and' as a merger … would erase the contrast the 'in the case of' phrases draw, making those words superfluous." But that's not correct. Article XIV, § 2's definition of "local government" turns on whether the political subdivision[3] is a municipality or a county. The "in the case of" phrases still apply with equal force when treating "and" as a conjunction.

---

[2] The principal opinion recognizes that not all towns, cities, and villages are incorporated, yet ignores this distinction because "[t]he drafters of article XIV, section 2 chose to allow counties to collect this tax only in unincorporated areas." In concluding that Missouri's municipal scheme is irrelevant here because it does not align with the final result, the principal opinion puts the cart before the horse.

[3] The plain text of article XIV, § 2 places the emphasis on "political subdivision[s]." "[T]he governing body of any local government is authorized to impose, by ordinance or order, an additional sales tax in an amount not to exceed three percent on all tangible personal property retail sales of adult use marijuana sold in such political subdivision." Mo. Const. art. XIV, § 2(6)(5). In contrast, the principal opinion focuses solely on whether an area is incorporated or unincorporated.

6

The phrase "in the case of an incorporated area" limits the definition of "local government" to incorporated villages, towns, and cities. And the phrase "in the case of an unincorporated area" removes that limitation on a county. So the word "and" means a county is a "local government" in both incorporated and unincorporated areas. This reading gives meaning to all words contained in the provision, harmonizes with the rest of article XIV, § 2, and follows the plain meaning of "and."[4]

In short, the plain text of article XIV, § 2.2(12) is clear: a county is a "local government" in both incorporated and unincorporated areas. And as a "local government"—regardless of whether the area is incorporated and unincorporated—a county can impose a 3-percent sales tax on recreational marijuana.

To reach the opposite conclusion, Robust and the principal opinion effectively treat "and" and "or" interchangeably. Missouri courts have, in limited situations, "found that 'and' can mean 'as well as,' 'in addition to' and 'also,' and that such meanings are the equivalent of 'or'[.]" *Burns v. Smith*, 303 S.W.3d 505, 511 (Mo. banc 2010). But there must be "strong reasons" for departing from the plain and ordinary meaning of "and," such as "where it must be done in order to effectuate the manifest intention of the user; and where not to do so would render the meaning ambiguous, or result in an absurdity; or would

---

[4] The principal opinion claims the "paired phrases" of "in the case of" "introduce two distinct, mutually exclusive scenarios," so that the word "and" "indicates those are the only two alternatives." "Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012). If the drafters of article XIV, § 2 intended "local government" to create two "mutually exclusive" classifications, they would have used "or" to "create[] alternatives." *Id.*

7

be tantamount to a refusal to correct a mistake." *Hawkins v. Hawkins*, 511 S.W.2d 811, 813 (Mo. 1974).

None of those concerns exist here.[5]  First and foremost, article XIV, § 2.1 explicitly provides that one of the primary purposes of legalizing recreational marijuana is to "tax[ ] the businesses involved" and to interpret the provisions of article XIV, § 2 in line with that purpose.  So even if article XIV, § 2's definition of "local government" is ambiguous—a finding I do not make—the constitution requires this Court to resolve that ambiguity in favor of permitting counties to impose an additional sales tax in incorporated areas.

Robust claims that reading "and" to mean "and" is not permissible here because the two clauses separated by "and" are mutually exclusive.  Because an area cannot be both incorporated and unincorporated, Robust argues, a county cannot be a "local government" in both incorporated and unincorporated areas.  But that analysis misses the mark.[6]  A city,

---

[5] This Court should be even more hesitant to depart from the plain and ordinary meaning of "and" in constitutional cases.  Unlike judicial interpretation of a statute—which the General Assembly can either ratify or overrule through the normal legislative process, *see DI Supply I, LLC v. Dir. of Revenue*, 601 S.W.3d 195, 204 (Mo. banc 2020) (Fischer, J., dissenting)—"a mistaken judicial interpretation of [a constitution] is often 'practically impossible' to correct through other means." *Ramos v. Louisiana*, 590 U.S. 83, 106 (2020). "[T]he constitution is organic, intended to be enduring until changed conditions of society demand more stringent or less restrictive regulations, and, if a decision construes the constitution in a manner not acceptable to the people, the opportunity of changing the organic law is remote." *Mountain Grove Bank v. Douglas Cnty.*, 47 S.W. 944, 947 (Mo. 1898).

[6] In support of this argument, Robust offers the following hypothetical: an invitation informs guests that "in the case of rain, the event will be held indoors, and in the case of clear weather, it will be held outdoors."  But this example loads the dice by substituting two mutually exclusive conditions—i.e., outdoor or indoor location—for the overlapping "village, town, or city" and county.

town, or village can be either incorporated or unincorporated, but they are always located in a county.

Constitutional provisions "cannot be interpreted in ways that yield unreasonable or absurd results that defeat[ ] the purpose of the" provision. *Berhow v. State*, No. SC100809, __ S.W.3d __, 2025 WL 1239580, at *2 (Mo. banc Apr. 29, 2025) (alteration in original) (internal quotation omitted). "A constitutional provision should never be construed to work confusion and mischief unless no other reasonable construction is possible." *Theodoro v. Dep't of Liquor Control*, 527 S.W.2d 350, 353 (Mo. banc 1975).

The principal opinion's interpretation of "local government" would lead to absurd results throughout the rest of article XIV, § 2 that further counsel against departing from the plain and ordinary meaning of "and." Article XIV, § 2.1 seeks to "protect public health by ensuring the safety of marijuana and products containing marijuana." But article XIV, § 2.5(3) provides the "only local government ordinances and regulations that are binding on a marijuana facility are those of the local government where the marijuana facility is located."[7] The construction the principal opinion adopts concludes a county is not the

---

[7] The principal opinion does not look to the rest of article XIV, § 2 in interpreting the phrase "local government." But the principal opinion's interpretation will be binding in every future article XIV, § 2 case involving the phrase "local government." "Presumably, a word has the same meaning in every place used within a statute." *Cook v. Newman*, 142 S.W.3d 880, 892 (Mo. App. 2004) (en banc); *see also Law v. Siegel*, 571 U.S. 415, 422 (2014) (recognizing the "normal rule of statutory construction that words repeated in different parts of the same statute generally have the same meaning" (internal quotations omitted)). And when that term is defined, that presumption "is binding on the courts" and becomes nearly irrebuttable. *See Ivie*, 439 S.W.3d at 203.

Moreover, interpreting § 2.2(12) without checking for any absurd results in the rest of § 2 disregards the "well established rule … that the [Missouri Constitution] must be read

9

"local government" for purposes of § 2.2(12) within an incorporated area; therefore, a county would be unable to enforce health and safety codes in that incorporated area. In a similar vein, "[l]ocal governments may enact ordinances or regulations not in conflict with this section, or with regulations enacted pursuant to this section, governing: (a) The time and place where marijuana may be smoked in public areas within the locality …." Can a county regulate the public consumption of marijuana in an incorporated area? Given the principal opinion's interpretation of "local government," the answer has to be no: even though "[t]his section is not intended to allow for the public use of marijuana." Mo. Const. art. XIV, § 2.1.[8]

<hr />

as a whole, insofar as other parts may throw light on the subject under investigation." *State ex rel. Montgomery v. Nordberg*, 193 S.W.2d 10, 11 (Mo. banc 1946).

[8] Resisting this conclusion, the principal opinion asserts that "ordinances and regulations have a narrowed meaning"—ordinances and regulations passed pursuant to the authority given by article XIV, § 2. Slip Op. at 13. Because other provisions of article XIV, § 2 enable a local government to enact "ordinances and regulations" related to recreational marijuana, the argument goes, then article XIV § 2.5(3) applies only to these article XIV, § 2 "ordinances and regulations." But the principal opinion's examples in support of that argument all contain language limiting the ordinances to marijuana-related ordinances. *See* Mo. Const. art. XIV, § 2.5(5) ("A local government may establish civil penalties for violation of an ordinance or regulations governing the time, place, and manner of operation of a marijuana facility or entity holding a transportation certification that may operate in such locality."); Mo. Const. art. XIV, § 2.5(6) ("Local governments may enact ordinances or regulations not in conflict with this section, or with regulations enacted pursuant to this section, governing: (a) The time and place where marijuana may be smoked in public areas within the locality; and (b) The consumption of marijuana-infused products within designated areas, including the preparation of culinary dishes or beverages by local restaurants for on-site consumption on the same day it is prepared."); Mo. Const. art. XIV, § 2.5(5) ("[N]o local government shall prohibit marijuana facilities or entities with a transportation certification either expressly or through the enactment of ordinances or regulations that make their operation unduly burdensome in the jurisdiction."); Mo. Const. art. XIV, § 2.2(23) ("'Unduly burdensome' means that the measures necessary to comply with the rules or ordinances adopted pursuant to this section subject licensees or potential licensees to such a high investment of money, time, or any other resource or asset that a

10

Furthermore, the principal opinion's interpretation of "local government" makes other language in article XIV, § 2 superfluous. Section 2.5(1)(a) permits a "local government" to "prohibit the operation of all microbusiness dispensary facilities or comprehensive marijuana dispensary facilities regulated under this section from being located within its jurisdiction"—so long as 60 percent of the "local government['s]" voters approve the ban at the same time as a presidential election. And § 2.5(1)(b) provides the relevant ballot language for the "local government" to use: "Shall (insert name of local government) ban all non-medical microbusiness dispensary facilities and comprehensive marijuana dispensary facilities from being located within (insert name of local government and, where applicable, its "unincorporated areas") and forgo any additional related local tax revenue?  ( ) Yes ( ) No."

Applying this language to the case at hand, the question would be posed to voters as: "Shall St. Louis County ban all non-medical microbusiness dispensary facilities and comprehensive marijuana dispensary facilities from being located within St. Louis County and its 'unincorporated areas' and forgo any additional related local tax revenue?  ( ) Yes ( ) No."  If, as the principal opinion holds, a county is only a "local government" in its unincorporated areas, then the phrase "and, where applicable, its 'unincorporated areas'" is superfluous and would misinform voters at the ballot box. The plain meaning of this ballot

---

reasonably prudent businessperson would not operate the marijuana facility.").  Unlike these other provisions, article XIV, § 2.5(3) contains no such language.  This Court has no authority to add language to constitutional provisions when the language written is clear and unambiguous.  *See Indep.-Nat'l Educ. Ass'n v. Indep. Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007).

11

language asks voters whether they want to ban all non-medical marijuana dispensaries in the entire county – incorporated and unincorporated areas alike. But applying the principal opinion's definition of "local government," that ban would be enforceable only in unincorporated areas.

To avoid this result, the principal opinion rewrites the ballot language to be consistent with its interpretation of "local government". The principal opinion claims "[n]either 'and' nor 'its,' [ ] is included in the specific ballot language," but provides no reasoning as to why that follows from its explanation of these terms. True, the word "and" here "means 'unincorporated areas' is added to the name of the local government," and the word "its" here "clarifies that the local government seeking the ban encompasses these 'unincorporated areas.'" Yet those two correct propositions do not affect the straightforward application of "insert name of local government and, where applicable, its 'unincorporated areas." Instead, the principal opinion substitutes the provided ballot language for its own version: deleting the words "and, where applicable its" to reach its preferred result. "[I]t is not for this court … to rewrite the Constitution." *State ex rel. Major v. Patterson*, 129 S.W. 888, 890 (Mo. banc 1910).

The patently absurd results of holding that "and" means "or" and that St. Louis County is not a "local government" within its own territorial jurisdiction confirms, once again, that simply applying the constitution's plain language meaning is the surest way for this Court to implement the law as it was intended.

12

## Conclusion

Because the circuit court correctly determined that a county can impose an additional three percent sales tax in an incorporated area, I would affirm the circuit court's judgment in all respects.

_____
Zel. M Fischer, Judge